UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 3:05cr281 (EBB) |
| | : | |
| v. | : | |
| | : | |
| **ANTHONY STONE** | : | August 9, 2009 |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government respectfully submits this memorandum in aid of sentencing in the above-referenced case. The Government agrees with the guideline calculations set forth in the Pre-Sentence Report ("PSR"). Specifically, the defendant's resulting range under the sentencing guidelines is 37-46 months' imprisonment. For the reasons set forth herein, a sentence of imprisonment within the defendant's guideline range is appropriate in this case.

I.   **PROCEDURAL BACKGROUND**

On November 4, 2008, Anthony Stone ("the defendant") pleaded guilty to Count One of the Indictment, which charged him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The parties executed a written plea agreement that day. In that agreement, the parties agreed that the defendant's base offense level is 20 because one of the six firearms that the defendant possessed -- specifically, the Maverick, Model 88, 12-gauge sawed-off shotgun, bearing serial number MV26794C -- is a firearm described in 26 U.S.C. § 5845(a) and the defendant was a prohibited person at the time of the instant offense. In addition, the Government maintains that two levels should be added pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three or more firearms. After reducing the defendant's offense

1

level by three levels for acceptance of responsibility, the defendant's adjusted offense level is 19. The parties agreed that the defendant appeared to be in criminal history category III, which results in a range of 37-46 months imprisonment and a fine range of $6,000 to $60,000. This is entirely consistent with the conclusions reached in the PSR.

At the guilty plea hearing, the defendant reserved the right to argue that he should receive only a one-level enhancement for possessing three or more guns. In addition, as part of the plea agreement, the defendant reserved the right to seek a downward departure or a non-Guideline sentence. The Government reserved the right to oppose any such request.

In addition, as part of his plea agreement, the defendant reserved his right to appeal the Court's September 19, 2007 ruling and the Court's October 10, 2008 amended ruling denying the defendant's motion to suppress the firearms seized from his residence. The Government agreed that, should the defendant prevail on appeal with respect to the suppression of the four firearms that are charged in count one of the Indictment, the Government will not object to the defendant's motion to withdraw his plea when the matter is remanded. With the exception of the defendant's right to appeal the suppression issue, the defendant waived his rights to appeal or collaterally attack his conviction or sentence of imprisonment if his sentence does not exceed 46 months' imprisonment.

## II.  FACTUAL BACKGROUND

As the Court is well aware, there was an extensive evidentiary hearing regarding the defendant's motion to suppress the six firearms, ammunition and other evidence seized from the defendant's home on January 8, 2005. The Court held an evidentiary hearing on the following

six dates: November 30, 2006, January 11th, 24th and 26th of 2007 and February 21st and 28th of 2007. The following facts are based upon evidence adduced during the evidentiary hearing:

### Tayarisha Stone's Domestic Violence Complaint

On January 8, 2005, at approximately 9:27 a.m., Tayarisha Stone called the Windsor Police Department to make a domestic violence complaint regarding her husband Anthony Stone (i.e., the defendant). (See Govt. Ex. 15).[1] According to Tayarisha, the defendant threatened to kill her and the defendant stated that there was nothing that the police or anybody else could do to stop him. (See id.). During the call, Tayarisha indicated that she was at her mother's apartment, located at 646C Windsor Avenue in Windsor, Connecticut. (See id.).

On January 8, 2005, at approximately 9:33 a.m., Officer Kari Tkacz of the Windsor Police Department went to 646C Windsor Avenue to investigate the domestic violence complaint. (See Vol. 1 at 6).[2] Tayarisha told Officer Tkacz that her husband, Anthony Stone, had been harassing her and had threatened to kill her. (See id. at 7). Tayarisha stated that she had been separated from her husband for approximately one week and that she had been living with her grandparents at 120 Highland Avenue, Windsor, CT since January 1, 2005. (See id. at 7-8; Vol. 4 at 19-20). Tayarisha stated that during the last twelve hours, her husband had called her repeatedly on her cell phone and threatened to kill her at least three times. (See id. at 7-8).

---

[1] All citations to exhibits are references to exhibits that were admitted into evidence during the evidentiary hearing regarding the defendant's motion to suppress.

[2] Citations to the transcripts of the testimony adduced on November 30, 2006, January 11, 2007, January 17, 2007, January 24, 2007, January 26, 2007, February 21, 2007 and February 28, 2007 are referenced herein as "Vol. 1 at __," "Vol. 2 at __," "Vol. 3 at __," "Vol. 4 at __," "Vol. 5 at __," and "Vol. 6 at __," respectively.

### Tayarisha Stone's First Written Sworn Statement

At approximately 9:45 a.m. on January 8, 2005, Tayarisha Stone provided Officer Tkacz with a written sworn statement (Tayarisha's "first sworn statement"). (See Govt. Ex. 1; Vol. 1 at 9-17). In her first sworn statement, Tayarisha Stone identified her residence as 157 Henry Street, Windsor, CT. (See Govt. Ex. 1). Tayarisha stated that her husband, Anthony Stone, kicked her out of their house on New Year's Eve (i.e., December 31, 2004) and, as a result, she had been living with her grandparents at 120 Highland Avenue, Windsor, CT with her two children, ages six and four, for the past week. (See id.). She stated that she came home from a New Year's Eve celebration and her clothes were in the trunk of her car, and that Anthony was mad at her because she had gone out. (See id.). She further stated that "[the defendant] has always been very verbally abusive towards me and told me that I could never leave him because he would not leave me alone. He has also said he'd kill me before he let me leave." (Id.).

In addition, Tayarisha Stone provided details in her first sworn statement regarding Anthony Stone's recent harassment of her. (See id.). Tayarisha stated that her husband called her on her cell phone repeatedly on January 7, 2005, asking her to come home. (See id.). When she said no, he started to threaten her. (See id.). According to Tayarisha, Anthony threatened her by stating "If you're not here in one hour, the next time I see you I'm going to kill you. You can tell the police, they're not going to be able to help me." (Id.). She said that her husband made that same threat to her three times, before she stopped answering the phone. (See id.).

In her first sworn statement, Tayarisha further stated that the defendant called her cell phone 23 times in the past twelve hours. (See id.). She said that the last time that he threatened her on the cell phone was at approximately 9:15 a.m. on January 8, 2005. (See id.). She stated

that, at approximately 9:30 a.m., her grandmother told her that Anthony went to 120 Highland Avenue, took Tayarisha's belongings out of her car, threw them on the ground and left in her car. (See id.). Tayarisha stated that she was afraid of her husband and that she would like a protective order against him to protect her and her kids. (See id.).

> **At Tayarisha's Request, Windsor Police Went With
> Tayarisha into the Stone Family's Home (the "Morning Search)**

At approximately 10:54 on January 8, 2005, Tayarisha called Officer Tkacz and requested that Windsor police officers accompany her to the Stone family's home at 157 Henry Street so that Tayarisha could retrieve items belonging to Tayarisha and her children. (See Vol. 4 at 18, 29-30; see also Vol. 1 at 22-23). Officer Tkacz notified Sergeant Freeman regarding Tayarisha's request and asked Sergeant Freeman for his assistance. (See Vol. 1 at 23). Officer Tkacz and Sergeant Freeman drove separate vehicles to 157 Henry Street, where they met Tayarisha and her mother. (See id.). Officer Tkacz recalled that when she arrived at 157 Henry Street, Tayarisha and her mother were standing on the back deck. (See id.).

While the officers were standing outside with Tayarisha and her mother, Sergeant Freeman asked Tayarisha if there were any weapons inside the Stone family's home. (See Vol. 1 at 24; Vol. 4 at 137, 260-261). Tayarisha told the officers that she believed that the defendant had firearms. (See id.). The officers proceeded to do a cursory search of the house for safety purposes to ensure that the defendant was not inside the home. (See Vol. 1 at 25; Vol. 4 at 137-138). After the officers cleared the home to ensure that the defendant was not there, Tayarisha and her mother entered the home. (See Vol. 1 at 26; Vol. 4 at 138).

Tayarisha told the officers that her husband, Anthony Stone, had two guns. (See Vol. 4 at 260-261). While standing in the first floor hallway at the Stone's house, the officers asked Tayarisha where the defendant kept the guns. (See Vol. 1 at 26-27; Vol. 4 at 139-140). In response, Tayarisha pointed toward the closet and stated that she believed that her husband kept a gun in the closet. (See id.). The officers understood that Tayarisha was directing them to look in the closet. (See Vol. 4 at 34, 236). Officer Tkacz opened the closet door and saw in plain view a Charter Arms .44 caliber revolver, which was loaded with five rounds. (See id.). The officers seized the firearm for safety purposes. (See Vol. 1 at 27; Vol. 4 at 34, 141-142).

Sergeant Freeman then asked Tayarisha if the defendant had any additional guns in the house. (See Vol. 4 at 144-146, 241-246). Tayarisha said that she knew of one more gun and then, without any instruction from the officers, proceeded to go upstairs to a bedroom and retrieved a blue Smith & Wesson handgun case. (See id.; see also Vol. 1 at 29-30). Tayarisha then handed to Sergeant Freeman the handgun case, which contained 52 rounds of .45 caliber ammunition and an empty .45 Smith & Wesson magazine. (See Vol. 4 at 145-148; Govt. Ex. 3A). While at the house with Tayarisha and her mother, the officers observed Tayarisha Stone and her mother retrieve personal belongings from the home. (See Vol. 1 at 25-26; Vol. 4 at 240).

**Windsor Police Were Not Able to Find Anthony Stone**

During the course of the day on January 8, 2005, Windsor police attempted to find Anthony Stone. (See Vol. 4 at 16-17, 152-153). Prior to arresting the defendant at approximately 5:45 p.m. on January 8, 2005, the police were not able to locate Anthony Stone. (See id.). Officer Tkacz testified, for example, that she went to 157 Henry Street and 120 Highland Avenue to look for the defendant, but she was not able to find him. (See Vol. 4 at 16-

6

17). Officer Tkacz also tried contacting the defendant by calling the number that Tayarisha said the defendant was using. (See Vol. 1 at 94). In addition, Sergeant Freeman testified that, in an effort to locate the defendant, the Windsor police put out a message over the mobile data terminals, which was sent to other police departments. (See Vol. 4 at 152-153). Sergeant Freeman further testified that Windsor police officers were sent to 157 Henry Street and 120 Highland Avenue to see if the defendant showed up at either location. (See id.).

During the investigation, the officers determined that Anthony Stone was a convicted felon as a result of his conviction for Risk of Injury to a Minor in 1996. (See Vol. 1 at 36-39; Govt. Ex. 4B). Officer Tkacz also learned that the defendant had prior incidents involving the Windsor Police Department. (See Vol. 1 at 40). Officer Tkacz ran an in-house history check regarding the defendant and had discussions with other Windsor officers regarding the defendant. (See id.). Officer Justin Kaldey testified, for example, regarding a discussion that he had with Officer Dwayne Taylor, Sergeant Freeman and Officer Tkacz. (See Vol. 5 at 162-165). During the discussion, Officer Taylor advised the other officers regarding a domestic violence matter involving the defendant and his wife that was investigated by Officer Taylor. (See id.). Officer Taylor advised that the defendant and his wife were arrested for family violence. (See id.).

**Tayarisha Stone's Second Written Sworn Statement**

At approximately 3:15 p.m. on January 8, 2005, Tayarisha provided Detective Michelle Neary of the Windsor Police Department with a second written sworn statement. (See Def. Ex. I). In her second sworn statement, Tayarisha again identified her residence as 157 Henry Street, Windsor, CT. (See id.). She stated that she had been married to Anthony Stone since 1997, but they had been having marital problems for the past two years. (See id.). Tayarisha stated that

7

Anthony took possession of his brother, Andrew Stone's, two guns after Andrew died in 1997. (See id.). She said that one gun was black and flat and the other gun was silver with a brown handle with a circular section. (See id.). She stated that both guns were kept in cases. (See id.). Tayarisha further stated that the Stone family moved to 157 Henry Street, Windsor, CT in December 1999. (See id.). After the family moved to 157 Henry Street, Anthony kept the guns in his dresser drawer. (See id.). Tayarisha stated that, approximately six months ago, she did not see the guns in the dresser drawer. (See id.). Anthony told her that he put the guns in the hallway closet. (See id.). Tayarisha stated that, when she was at the Stone family's home with the police today, the black gun was still there, but the gun with the brown handle was gone. (See id.). Once again, Tayarisha stated that she was afraid of her husband. (See id.).

### Windsor Police Obtained a Warrant to Search the Stone Family's Home

During the afternoon of January 8, 2005, the Windsor police obtained a search warrant issued by a State of Connecticut Superior Court judge authorizing the police to search 157 Henry Street, Windsor, CT and the defendant for a firearm and ammunition. (See Govt. Ex. 8). The search warrant application consisted of a four-page form, along with Officer Tkacz's incident report (i.e., Govt. Ex. 6) and Tayarisha Stone's first sworn written statement (i.e., Govt. Ex. 1), which were attached to and made part of the application. (See Govt. Ex. 8). The application for the search warrant was based on, *inter alia*, the defendant's threats to his wife, the evidence that the defendant possessed firearms and the fact that the defendant was a convicted felon as a result of his conviction for Risk of Injury to a Minor in March 1996. (See id.).

The first page of the application advised the state judge that the defendant had called his estranged wife on her cell phone during the morning of January 8, 2005 and threatened to kill her

if she did not return home within an hour. (See id.). It also stated that the defendant told his wife that the police would not be able to help her. (See id.). The first page of the application further advised that the Windsor police has had prior contact with the defendant and his wife in August 2003 for domestic violence, that the defendant had a history of the use, attempted use or threatened use of force against other persons and that the defendant had a felony conviction from 1996 for Risk of Injury. (See id.).

In addition, the police report and Tayarisha's first written sworn statement advised the state judge of, *inter alia*, the following facts: the defendant and Tayarisha had been married for seven years and have two children, ages 6 and 4; the defendant kicked Tayarisha Stone out of the family home on December 31, 2004; the defendant has always been very verbally abusive towards Tayarisha and told her that she could never leave him; the defendant has told Tayarisha that he would kill her before he let her leave him; Tayarisha and her two children moved in with Tayarisha's grandparents approximately one week ago; the defendant repeatedly called Tayarisha on her cell phone on January 7, 2005, asking her to move back home; at approximately 8:30 p.m. on January 7, 2005, the defendant started threatening Tayarisha; the defendant threatened to kill Tayarisha if she did not return home in one hour; the defendant further threatened that the police would not be able to help Tayarisha; the defendant threatened to kill Tayarisha three times; at approximately 9:30 a.m. on January 8, 2005, Tayarisha's grandmother told her that the defendant took Tayarisha's belongings out of her car, threw them on the ground and took her vehicle; during the evening of January 7, 2005 and the morning of January 8, 2005, the defendant called Tayarisha's cell phone approximately 23 times; Tayarisha contacted the Windsor Police Department because she feared that the defendant would follow through with his threat;

Tayarisha is afraid of the defendant and wants a protective order against him to protect her and her kids; on January 8, 2005, Tayarisha asked Windsor police officers to accompany her to 157 Henry Street so that she could retrieve some personal belongings; while in the first floor hallway at 157 Henry Street, Tayarisha directed the officers to a closet which contained a .44 caliber revolver that was loaded with five rounds; Tayarisha located in the house and provided to the officers a blue Smith & Wesson handgun case that contained 52 rounds of .45 caliber ammunition and an empty magazine; and Tayarisha believed that her husband owned another handgun.  (See id.).

### Windsor Police Arrested the Defendant

At approximately 4:43 p.m. on January 8, 2005, Tayarisha called Officer Tkacz and told Officer Tkacz that the defendant had called her and said he was coming to 120 Highland Avenue (i.e., Tayarisha's grandparents home, where Tayarisha and her children had been staying for the past week) to pick up the kids.  (See Vol. 1 at 59; Vol. 4 at 42-43).  Tayarisha said that she told the defendant not to come to the residence and that she was going to get a protective order against him because of his threats.  (See id).  Officer Tkacz understood that the defendant was requesting the assistance of the Windsor Police Department.  (See Vol. 4 at 43).  Shortly thereafter, Windsor police officers stopped the defendant's vehicle as it approached 120 Highland Avenue and arrested the defendant for harassment.  (See Vol. 1 at 60).

**The Execution of the Warrant to Search
the Stone Family's Home (the "Afternoon Search")**

After arresting the defendant, Windsor police officers executed the search warrant at 157 Henry Street.  (See Vol. 1 at 62; Vol. 5 at 28).  Prior to executing the search warrant, Detective Neary went to 120 Highland Avenue to ask Tayarisha for a key to 157 Henry Street.  (See Vol. 5 at 89-91, 146, 149-150).  Detective Neary did not recall who at 120 Highland Avenue provided her with the key, but she recalled providing the key to Sergeant Freeman.  (See id.).  Sergeant Freeman testified that Tayarisha gave the key to Detective Neary who handed the key to Sergeant Freeman and that the key was used to enter 157 Henry Street for the purpose of executing the search warrant.  (See Vol. 4 at 167-168).

The officers testified that 157 Henry Street appeared to be a single family home.  (See Vol. 1 at 35-36; Vol. 4 at 149-150, 169; Vol. 5 at 41-42; Govt. Ex. 9G).  In the living room, there was a Christmas tree, stockings, toys and family photographs.  (See id.).  The basement area was finished and looked to be a family gathering place, as it contained a television, couches, a video game unit and children's items.  (See Vol. 1 at 64; Vol. 5 at 34-35; Govt. Ex. 10).  Detective Neary took photographs both of the home and of the evidence during the execution of the search warrant.  (See Vol. 4 at 169-171; Vol. 5 at 29-30).  In addition, police officers observed mail addressed to the defendant and to Tayarisha Stone.  (See Vol. 4 at 169).

During the search of 157 Henry Street, the police found five firearms in the finished basement family room.  (See Govt. Ex. 10).  The police found a Maverick 12-gauge sawed-off shotgun, a loaded Marlin 9 mm caliber rifle and a blue duffle bag containing numerous rounds of ammunition in an unlocked closet in the basement family room.  (See id.).  The police found with

the blue duffel bag personal belongings marked "Andrew Stone" and a plastic baggy tagged "Andrew Stone autopsy." (See id.). The police also found two loaded handguns (i.e., a Ruger .357 Magnum revolver and a Smith & Wesson .45 caliber pistol) in an unlocked cabinet in the basement. (See id.). Furthermore, the police found a loaded Smith & Wesson .22 caliber pistol under a couch cushion in the basement. (See id.). In addition, the police found 11 knives, 3 samurai swords and a hand held cross bow in the house. (See id.). The knives were found in common living areas in the home, including under the living room couch, between cushions on the living room couch and in the basement family room area. (See id.). Windsor police seized the firearms, knives, swords and cross bow. (See id.).

### The Criminal Charges Against Anthony Stone

On November 9, 2005, a federal grand jury sitting in Hartford, Connecticut returned a one-count Indictment charging the defendant with possession of a firearm by a convicted felon in violation of Title 18, United States Code Section 922(g)(1). The Indictment charges the defendant with illegally possessing four of the firearms that were seized by the Windsor police during the afternoon search of the Stone family's home on January 8, 2005, that is, the Ruger .357 Magnum revolver, the Smith & Wesson .45 caliber pistol, the Smith & Wesson .22 caliber pistol and the Maverick 12-gauge sawed-off shotgun.

### III.  DISCUSSION

The Government respectfully submits that a period of incarceration within the defendant's guideline imprisonment range of 37-46 months should be imposed for several reasons. First, such a sentence should be imposed to reflect the seriousness of the crime committed by the defendant. As discussed in detail above, the defendant is a convicted felon as a

result of his conviction for Risk of Injury to a Minor in 1996. On January 8, 2005, the Windsor police were investigating a very serious domestic matter, in which Tayarisha Stone had alleged that the defendant had repeatedly threatened to kill her and that she believed that her husband possessed firearms. During the morning and afternoon of January 8, 2005, the Windsor police seized six firearms from the defendant's residence. One of the firearms was a sawed-off shotgun and four were loaded with ammunition. All six guns, along with numerous ammunition, knives, swords and a hand-held cross bow, were unlocked and accessible to occupants of the residence. The Government submits that this is serious criminal conduct. A sentence of imprisonment within the defendant's applicable guidelines range is necessary to adequately reflect the seriousness of the offense committed in this case, as well as promote respect for the law and provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

Second, such a sentence would address the defendant's history and characteristics, including his criminal history. During the evidentiary hearing, evidence was adduced regarding the Windsor Police Department's prior contact with the defendant and his wife for domestic violence. In addition, evidence was adduced regarding the defendant's history of the use, attempted use or threatened use of physical force against other persons. This included evidence regarding, *inter alia*, the defendant's sexual assault of a fifteen year old girl in 1995, which resulted in the defendant's risk of injury conviction in 1996 (see Govt. Ex. 24), the defendant's sexual assault of a female tenant in March 2004, which resulted in the defendant's sexual assault 4th conviction in 2004 (see Govt. Ex. 25), the domestic violence matter involving the defendant and his wife in May 2004 (see Govt. Ex. 17), the arrest of the defendant and a twenty year old woman in 2003 (see Def. Ex. M) and the arrest of the defendant for Assault 3rd Degree and

13

Breach of Peace in December 2005.  Further, during the defendant's bond revocation hearing, evidence was adduced regarding an incident involving the defendant and a female adult in October 2007, which resulted in the defendant's arrest for Unlawful Restraint 1st Degree, Breach of Peace and Reckless Endangerment 2nd Degree.  Concerns regarding the defendant's criminal history are best summarized in the Probation Officer's Evaluation in the PSR, which states, in part, the following: "The defendant's criminal history is a troubling one, that is violent in nature as well.  In addition to his prior convictions, he has several matters pending in state courts, some of which carry allegations of violence and threatening behavior.  Although the defendant stated that the instant offense is based solely on his having taken custody of his deceased brother's weapons, prohibitions against felons in possession of weapons were precisely designed to keep guns out of the hands of defendant's like this one."  PSR at ¶ 62.

<u>Third</u>, a sentence to a substantial term of imprisonment is necessary to provide adequate specific and general deterrence.  Such a sentence would send the important message not that the possession of a firearm -- particularly, multiple firearms that are loaded with ammunition -- will not be tolerated by this Court.

Finally, the Government recognizes that the Court, in fashioning an appropriate sentence, should, of course, consider the defendant's need for substance abuse and/or mental health treatment.  Based on the information set forth in the PSR, it appears that the defendant would benefit from mental health and substance abuse evaluation, treatment and counseling during any period of supervised release ordered by the Court.

IV.     **CONCLUSION**

      For the foregoing reasons, the Government respectfully submits that the Court should impose a sentence within the defendant's applicable Guidelines range, which the PSR correctly calculated to be 37 to 46 months' imprisonment.

      Respectfully submitted,

      NORA R. DANNEHY
      UNITED STATES ATTORNEY

      /s/ Geoffrey M. Stone

      GEOFFREY M. STONE
      ASSISTANT UNITED STATES ATTORNEY
      450 Main Street
      Hartford, Connecticut  06103
      Telephone (860) 947-1101
      Federal Bar No. CT25326

CERTIFICATE OF SERVICE

      This is to certify that on August 9, 2009, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            /s/ Geoffrey M. Stone
            By:      _____
                                            GEOFFREY M. STONE
                                            Assistant U.S. Attorney